WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cachet Residential Builders, Inc., | No. CV-07-1256-PHX-ROS |
| Plaintiff, | **ORDER** |
| vs. | |
| Gemini Insurance Co., et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Partial Judgment on the Pleadings (Doc. 41). For the reasons stated herein, Defendants' Motion shall be granted.

## BACKGROUND

Plaintiff Cachet Residential Builders ("Cachet") purchased five insurance policies from Defendant Gemini Insurance Company ("Gemini") for residential projects they were developing. These policies provided commercial general liability insurance coverage, including coverage for construction defect claims. Cachet paid Gemini a substantial "Advance Premium" on each policy, and each policy provided that, in the event it was cancelled, Gemini would remit to Cachet the "premium refund due," calculated in a *pro rata* manner.

On February 27, 2006, Cachet canceled one of the policies in question and requested a refund of $225,000 of the $300,000 Advance Premium. Gemini and Defendant Cromwell Management Corporation ("Cromwell"), which was hired by Gemini to serve as its

1  underwriting manager, refused.  Using a different method to calculate the *pro rata* refund,
2  they refunded only $100,259.10.

3  The parties failed to reach agreement on the correct method of calculating the
4  premium refund.  Cachet, taking the position that Gemini has also anticipatorily breached the
5  contracts for the policies that have been cancelled, brought suit against Gemini for Breach
6  of Contract, Unjust Enrichment and Breach of the Covenant of Good Faith, against Cromwell
7  for Tortious Interference with Contract, and against both Gemini and Cromwell for Breach
8  of Fiduciary Duty.

9  In this Motion, Cromwell and Gemini argue that Cachet's claims of Bad Faith and
10  Breach of Fiduciary Duty are invalid on the face of the pleadings.

## STANDARD OF REVIEW

12  Motion for judgment on the pleadings under Rule 12(c) is generally used to "resolve
13  the substantive merits of the controversy as disclosed on the face of the pleadings."  Wright
14  & Miller, Federal Practice & Procedure § 1367 (1999).  In the modern context, it "only ha[s]
15  utility when all material allegations of fact are admitted or not controverted by the pleadings
16  and only questions of law remain to be decided by the district court."  Id.  "Judgment on the
17  pleadings is proper when, taking all the allegations in the pleadings as true and construed in
18  the light most favorable to the nonmoving party, the moving party is entitled to judgment as
19  a matter of law."  Living Designs, Inc. v. E.I.. Dupont de Nemours and Co., 431 F.3d 353,
20  360 (9th Cir. 2005)."

## ANALYSIS

### A. Breach of the Covenant of Good Faith

23  "The law implies a covenant of good faith and fair dealing in every contract."
24  Rawlings v. Apodaca, 726 P.2d 565, 569 (Ariz. 1986) (citing Wagenseller v. Scottsdale
25  Memorial Hosp., 710 P.2d 1025, 1038 (1985); Restatement (Second) of Contracts § 205
26  (1985); 5 Williston on Contracts § 670 at 159 (3rd ed., Jaeger ed. 1961)).  "The essence of
27  that duty is that neither party will act to impair the right of the other to receive the benefits
28  which flow from their agreement or contractual relationship."  Id. (citing Wagenseller, 710

P.2d at 1038). An insurer breaches the covenant of good faith when it fails to "give equal thought to the end that both the insured and the insurer shall be protected." Farmers Ins. Exch. v. Henderson, 313 P.2d 404, 406 (Ariz. 1957); see also General Accident Fire & Life Assurance Corp. v. Little, 443 P.2d 690, 698 (Ariz. 1968). Accordingly, an insurer violates its duty when it is "moved by partiality to itself" in deciding to accept or reject a reasonable settlement offer (nor is it required "to give the interests of the insured preferential consideration"). Id. Similarly, "an insurer that intentionally and unreasonably denies or delays payment breaches the covenant of good faith owed to its insured," Noble v. National Am. Life Ins. Co., 624 P.2d 866 (1981), as did an insurer that "groundlessly asserted that it had no obligation to continue payments once the policy was terminated." Rawlings, 726 P.2d at 572 (citing Sparks v. Republic National Life Insurance Co., 647 P.2d 1127 (Ariz. 1982).

However, the insurer is not required to prevent all harm to the insured. "As long as it acts honestly, on adequate information and does not place paramount importance on its own interests, it should not be held liable because of a good faith mistake in performance or judgment." Id. at 573 (citing Little, 443 P.2d at 697; City of Glendale v. Farmers Ins. Exchange, 613 P.2d 278, 281 (1980)). Nor is "every breach of an express covenant in an insurance contract . . . a breach of the covenant of good faith and fair dealing." Id. Instead, "[t]he implied covenant is breached, whether the carrier pays the claim or not, when its conduct damages the very protection or security which the insured sought to gain by buying insurance." Id. One case stated the principle even more narrowly: "[t]he tort of bad faith only arises when the insurance company intentionally denies or fails to process or pay a claim without a reasonable basis for such action." Deese v. State Farm Mut. Auto Ins. Co., 838 P.2d 1265, 1268 (Ariz. 1992). Applying these principles, one Arizona appellate court concluded that an insurer's decision whether to pay dividends on a workers' compensation policy or how much to pay did not give rise to a cause of action for bad faith, as "the insured employer is not at risk of losing the contracted for security or protection from the insured risk of claims by an injured employee. Instead, the employer is at risk of losing, at most, only a

1 potential profit or commercial advantage in the form of a refund of a portion of the premium
2 paid." <u>Beaudry v. Ins. Co. of the W.</u>, 50 P.3d 836, 842 (Ariz. Ct. App. 2002).

3       This case is nearly indistinguishable. Plaintiffs had already cancelled their premiums
4 and the dispute is over the amount of the refund to them. No claim was being paid on the
5 policy, or defense of Plaintiffs being undertaken by the insurance company. Accordingly,
6 they are looking merely at a pecuniary issue rather than one involving their protection or
7 security. This is quite different from a decision not to accept a settlement offer or to
8 gratuitously deny a valid claim; in those situations, insured parties are put in the position of
9 being refused or unable to afford medical treatment or other protection that they had
10 specifically insured themselves for. While Plaintiff attempts to distinguish the two cases by
11 arguing that only one insurance premium was at issue in <u>Beaudry</u> while five are here,
12 establishing a pattern of bad behavior, the number of insurance premiums was not critical to
13 the holding of <u>Beaudry</u>, quoted above. Rather, it was discussed in the context of what was,
14 essentially, dicta on the topic of punitive damages.

15       Accordingly, judgment on this count shall be granted to Defendants.

## B. Breach of Fiduciary Duty

17       Defendants argue that fiduciary duties do not generally arise in the context of ordinary
18 commercial relationships generally or insurers and insured more specifically and that,
19 therefore, Plaintiffs's claim for Breach of Fiduciary Duty against both Gemini and Cromwell
20 must be dismissed.

21       "A commercial contract creates a fiduciary relationship only when one party agrees
22 to serve in a fiduciary capacity." <u>Urias v. PCS Health Sys. Inc.</u>, 118 P.3d 29, 25 (Ariz. Ct.
23 App. 2005). As a general rule, courts have given great effect to the language in the
24 agreements between the parties. <u>See</u>, <u>e.g.</u>, <u>Morgan v. American Fidelity Fire Ins. Co.</u>, 210
25 F.2d 53, 55(8th Cir. 1954) (noting that "[t]he contract here specifically provided that
26 defendant in his transactions with the plaintiff was acting in a fiduciary capacity.") (cited in
27 <u>Urias</u>, 119 P.3d at 25).

28

1       Where no such language exists, however, the situation is less clear.  One Arizona 2 court found that "insurance agents generally are not fiduciaries, but instead owe only a duty 3 of 'reasonable care, skill, and diligence' in dealing with clients." Webb v. Gittlen, 174 P.3d 4 275, 279 (Ariz. 2008). Similarly, "although the insured is entitled to expect that the insurer 5 will be 'on his side' at least to the extent of treating him honestly and fairly, [the Arizona 6 Supreme Court did not] go so far as to hold that the insurer is a fiduciary, but [did] hold that 7 it has some duties of a fiduciary nature. Equal consideration, fairness and honesty are among 8 them." Rawlings, 726 P.2d at 571 (internal citations omitted); see also, Twin City Fire Ins. 9 Co. v. Burke, 63 P.3d 282, 286 (Ariz. 2003); Walter v. Simmons, 818 P.2d 214, 223 (Ariz. 10 Ct. App. 1991) ("Although not strictly a fiduciary, an insurer's duty of good faith is of a 11 fiduciary nature.")  In Beaudry, the court implied that a finding that there was no fiduciary 12 duty was coterminous with finding that there was no cause of action for good faith. 50 P.3d 13 at 842.

14       None of this language states or even implies that these duties of a fiduciary nature 15 give rise to a cause of action against an insured for breach of fiduciary duty.  If such an 16 action can exist, however – this Court sees no need to decide that question in the abstract – 17 there is certainly no indication that it exists here, where the alleged breach does not relate to 18 the provision of safety and protection.  The special duties of an insurer recognized by 19 Arizona courts lie in that arena.  This action, on the other hand, concerns a dispute over the 20 calculation of a refund after the premium after a policy has been cancelled rather than the 21 payment of a claim and therefore is divorced from an insurer's duties of  protection.

22       Plaintiff cannot bring a claim against either Gemini or Cromwell for Breach of 23 Fiduciary Duty.  The claim against Cromwell further fails because it had no contractual 24 relationship with Plaintiff.  As stated above, a fiduciary relationship can be created only 25 when one party agrees to serve as a fiduciary for another.

26       Accordingly,

27       **IT IS ORDERED** Defendants' Motion for Partial Judgment on the Pleadings is 28 **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiff's Second Cause of Action shall be **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** Plaintiff's Fifth Cause of Action shall be **DISMISSED** with prejudice as to both Defendants.

DATED this 17th day of March, 2009.

_____
Roslyn O. Silver
United States District Judge